## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALFONZO SANCHEZ,
    **Plaintiff**

    **v.**            :     **CIVIL ACTION NO. 21-CV-4797**

MR. PIROLLI, *et al.*,
    **Defendants**

### MEMORANDUM

**PRATTER, J.**                  **DECEMBER 29, 2021**

Plaintiff Alfonso Sanchez, a prisoner held at Bucks County Correctional Facility

("BCCF"), filed this civil action pursuant to 42 U.S.C. § 1983 using the Court's preprinted form

for use by prisoners seeking to assert civil rights violations. Listed as defendants are numerous

officials employed at BCCF, including prison directors, wardens, supervisory correctional

officers, and members of the Prison Oversight Board, as well as Primecare Medical, and Bucks

County.[1] Each are sued in their official and individual capacities. Mr. Sanchez seeks to proceed

*in forma pauperis* and has submitted a copy of his institutional account statement. For the

---

[1] The complete list of Defendants is: Directors Pirolli and Kratz; Wardens Lagana, Galione and Reed; Metelus Ward; Captain Nottingham; Lt. Mazzocchi; Investigators Frank Bocherrek, Dan Onisek and DiSandro; Assistant Director Coyne; Prison Oversight Board members Robert Harvie, Jr., Diane M. Ellis-Marseglia and Gene DiGirolame; Judge Wallace Bateman; District Attorney Matt Weintraub; Milt Warrell, Ann Russavage-Faust; Christine Shenk; Karen Dopson; Daniel Grace; Sara Webster; "BCCF Primecare Medical dept. and mental health dept."; and Bucks County. (ECF No. 2 at 3-4; 2-1 at 1.)

Mr. Sanchez fails to identify any affiliation for several defendants. Milt Warrell is the Bucks County Sheriff who is also a member of the Board. Ann Russavage-Faust appears to be a public defender in Bucks County as well as a member of the Board. Christine Shenk appears to be the Chief Probation Officer in Bucks County and a member of the Board. Karen Dopson, Daniel Grace, and Sara Webster are each citizen members of the Board. Judge Bateman and District Attorney Weintraub are also Board members. *See* https://www.buckscounty.gov/215/Prison-Oversight-Board (last viewed Dec. 27, 2021).

following reasons, the Court will grant Mr. Sanchez leave to proceed *in forma pauperis* and direct service of his Complaint for a responsive pleading against Defendants Frank Bocherrek, Dan Onisek and DiSandro only with regard to Mr. Sanchez's individual capacity claims against them based on retaliation.  All other claims against all other defendants are dismissed, although the Court will give Mr. Sanchez the option of (1) filing an amended complaint as to certain claims described below or (2) to proceeding only with the retaliation claims.

## I.    FACTUAL ALLEGATIONS

Mr. Sanchez alleges that on January 26, 2017, a state court entered an order vacating his criminal homicide conviction and granted him a new trial.  (ECF No. 2-1 at 4.)[2]  Shortly thereafter, he was transported from a state correctional institution to BCCF to await retrial.  (*Id.*) On December 13, 2018, he filed a civil rights lawsuit against Bucks County in this Court based on his exoneration alleging that investigators fabricated DNA evidence in his first criminal trial. (*Id.*, *see Sanchez v. Bucks Cty.*, Civ. A. No. 18-5381 (E.D. Pa.).)  Mr. Sanchez alleges that, *inter alia*, he has suffered retaliation based on the filing of that lawsuit.  (ECF No. 2-1 at 4)

Mr. Sanchez alleges that on November 5, 2020 he was placed in administrative segregation for an indeterminate time without notice or an opportunity to respond.  (*Id.* at 5.) Between November 2020 and July 2021, Mr. Sanchez wrote request slips to BCCF administrators, including Deputy Warden Reed and others.  BCCF investigators Bocherrek, Onisek and DiSandro allegedly suggested to him that his status in administrative segregation could be changed if Mr. Sanchez dropped his pending lawsuit against Bucks County.  (*Id.* at 6.) He concedes that the Bucks County District Attorney filed new criminal cases against him

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

alleging offenses he committed at BCCF, but he asserts that on July 2, 2021, "the Department of Corrections [] determined that [he did] not pose a present danger to the institution and has placed him into general population." (*Id.*)

According to Mr. Sanchez, he was placed in administrative segregation due to a request made by the Bucks County District Attorney's Office in a motion filed in his criminal matter. (*Id.* at 7.) Attached to the Complaint is a copy of an emergency motion filed by the District Attorney to modify Mr. Sanchez's bail and impose new bail conditions. (*Id.* at 75-78.) The Commonwealth argued in the motion that Mr. Sanchez posed a danger to prisoners and staff at BCCF because he solicited multiple individuals to murder a witness in his homicide case. (*Id.* at 76.) While conceding that the Court could not specifically order officials at BCCF to keep Mr. Sanchez in administrative segregation, the District Attorney sought to modify his non-monetary conditions of release to include a condition that he have no contact with other incarcerated offenders. (*Id.* at 77.) The motion was signed by District Attorney Weintraub. (*Id.* at 78.) The Court of Common Pleas denied the motion, but BCCF officials nonetheless detained Mr. Sanchez confined in administrative segregation until July 26, 2021, allegedly to punish and retaliate against him for his lawsuit. (*Id.* at 7-8) On August 30, 2021, he was placed in restricted housing for 37 days and then in administrative segregation, allegedly due to a "minor misconduct allegation" but, Mr. Sanchez asserts, the true reason was again to retaliate against him. (*Id.* at 8.) Attached to the Complaint, however, is a decision dated August 7, 2021 from Defendant DiSandro advising Mr. Sanchez that "the investigation concerned you making calls on other inmates accounts. This is another institutional violation that you have engaged in." (*Id.* at 66.) Mr. Sanchez was moved from disciplinary segregation to administrative segregation on August 29, 2021 and informed by Warden Reed that his status was due for review shortly." (*Id.* at 71.)

Mr. Sanchez alleges that while in administrative segregation he was not allowed to contact his defense attorney. (*Id.* at 8, *but see id.* at 85 (responding to a grievance filed by Mr. Sanchez informing him that he will be permitted to contact counsel through his case manager).)

Mr. Sanchez contends that BCCF investigators have attempted to induce other inmates to participate in their investigation against him by telling the inmates Mr. Sanchez is guilty of his alleged crimes and giving them details of the cases. (*Id.* at 9.) Investigators allegedly told him "they can do what they want and can keep [him] locked for as long as they want cause there is no policy." (*Id.*)

Appended to the Complaint are numerous copies of requests Mr. Sanchez forwarded to prison officials, including Defendants Warden Reed (*Id.* at 17-21, 30-44, 69-71), Investigators Bocherrek, Onisek, and DiSandro (*id.* at 25-27, 66), Director Pirolli (*id.* at 29), and Director Kratz (*id.* at 46, 60) seeking information as to why he was put under investigation or complaining that he should not be held in administrative segregation. On November 28, 2020, Warden Reed informed Mr. Sanchez that his request for information would be answered within ten days because the investigation is still pending. (*Id.* at 17.) On January 7, 2021, Warden Reed stated she inquired the day before about his status and will answer him when she has information. On January 14, 2021, Mr. Sanchez was told his placement was due to an "administrative decision to place you on RHU status. You will need to ask the Warden (Galione) about this." (*Id.* at 22 (parenthetical in original).) The next day a different non-defendant official told him "until we are notified that the investigation is complete, you will remain on the status." (*Id.* at 23.) In a reply dated February 4, Mr. Sanchez was told "refer to your [inquiry] dated 1-18-2021 you were informed of the reason you are on locked/RHU status." (*Id.* at 25.) On February 17, 2021, Mr. Sanchez received a reply to a letter he wrote to Board

member Sara Webster in which Ms. Webster told him she "checked with the prison who confirmed that indeed you had been under investigation and therefore subject [to] confinement in your cell pending investigation of activities jeopardizing the security of the institution." (*Id.* at 25.) On February 22, he was informed he was being held in administrative segregation because "as you were previously told, charges are forthcoming." (*Id.* at 27.) Mr. Sanchez was also told "your status is reviewed regularly." (*Id.* at 30.) On March 16, 2021, he was told his status was due to be reviewed again on March 26. (*Id.* at 35.) On April 1, Warden Reed told Mr. Sanchez "you are on administrative lock for the safety and security of the institution at this time. Your status will continue to be reviewed regularly and when deemed appropriate you lock status will be removed." (*Id.* at 36.) One week later, he was told "no further explanation will be provided at this time. Your status will be reviewed regularly." (*Id.* at 38.) Mr. Sanchez continued to seek monthly updates on his status and received a response for May, June, and July. (*Id.* at 40-44.) As noted above, Mr. Sanchez was released from administrative segregation in July. (*Id.* at 6.)

As noted, on August 30, 2021, Mr. Sanchez was placed in restricted housing for 37 days and then in administrative segregation, allegedly due to a "minor misconduct allegation" but, Mr. Sanchez asserts, the true reason was again to retaliate against him. (*Id.* at 8.) He alleges the "prison oversight board has admitted he was returned to admin seg because of a misconduct allegation" and he had no ability to challenge the designation. (*Id.*) Mr. Sanchez alleges that while in administrative segregation he has not been allowed to contact his defense attorney. (*Id.*, *but see* ECF No. 2-1 at 85 (responding to a grievance filed by Mr. Sanchez informing him that he will be permitted to contact counsel through his case manager).)

Mr. Sanchez also asserts that he wrote to "Monica" of the BCCF mental health unit, and presumably an employee of Prime Care Medical, stating that he was hearing voices, having sleep

disturbances and panic attacks, and requesting she have him moved to a different cell block. (*Id.* at 47-48.) He also complained about foot injuries but was told he could not have crutches or a wrap for his foot while in restricted housing and that, while his request for Air Jordan sneakers was denied because it was not an appropriate treatment for his foot injury, he could apply to get orthopedic shoes. (*Id.* at 90-105.) An x-ray performed on January 20, 2021 was negative. (*Id.* at 98.)

Finally, Mr. Sanchez asserts that his personal property was stolen or misplaced. (*Id.* at 110.) These include eyeglasses, food items, sneakers and clothing, books, photos, and unspecified legal materials. (*Id.*) He allegedly reported the theft to Warden Reed and Captain Nottingham. (*Id.* at 110-11.) Mr. Sanchez asserts claims under the First, Sixth and Fourteenth Amendments.[3] He seeks an immediate transfer to the general population at BCCF, that all defendants be terminated from their employment, and money damages. (*Id.* at 107-08.)

A review of public records reveals that Mr. Sanchez was convicted before Judge Alan Rubenstein of criminal homicide and related charges on October 22, 2008. *See Commonwealth v. Sanchez*, CP-09-CR-1136-2008 (C.P. Bucks). However, the convictions were reversed on January 26, 2017 through the grant of a petition under the Pennsylvania Post-Conviction Relief Act. *Id.* Thereafter, Mr. Sanchez's criminal case was heard before both Judge Rubenstein and Judge Wallace Bateman and remains pending. *Id.* In addition to his homicide charges, Mr. Sanchez was also charged on February 6, 2021 with being a member of a corrupt organization

---

[3] Mr. Sanchez also cites the Fourth, Fifth and Eighth Amendments as the sources of his claims. Because the public records shows that his conviction has been overturned and Mr. Sanchez asserts he is being held at BCCF as a pretrial detainee, the Court will construe his claims as Fourteenth Amendment due process claims except as otherwise noted below. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (holding that the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees).

and with related controlled substances offenses. *See Commonwealth v. Sanchez*, CP-09-CR-3008-2021 (C.P. Bucks). These appear to be the "new charges" to which Mr. Sanchez refers as having allegedly occurred while he was detained at BCCF and the alleged crimes appear to be the reason why he was placed in administrative segregation. Those charges are pending.

## II.    STANDARD OF REVIEW

The Court grants Mr. Sanchez leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Mr. Sanchez is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

---

[4] However, because Mr. Sanchez is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

## III.   DISCUSSION

The statutory vehicle by which federal constitutional claims may be brought in court is

Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S.

42, 48 (1988).

### A.   Official Capacity Claims and Claims Against Bucks County

Mr. Sanchez has named all defendants in their official capacities. All defendants other

than Judge Bateman are employees of Bucks County. Judge Bateman is a judge of the Bucks

County Court of Common Pleas, as well as a member of the Bucks County Board. To the extent

the official capacity claim against Judge Bateman concerns his role in Mr. Sanchez's criminal

cases, the claim is not plausible and will be dismissed with prejudice. The Bucks County Court

of Common Pleas is part of Pennsylvania's unified judicial system, and thus shares in the

Commonwealth's Eleventh Amendment immunity. *See Benn v. First Judicial Dist. of Pa.*, 426

F.3d 233, 241 (3d Cir. 2005). Official capacity claims against state officials such as Common

Pleas Court judges are really suits against the Commonwealth, and as such, are also barred by the

Eleventh Amendment. *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003); *see*

*also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).[5]

To the extent the claim against Judge Bateman concerns his role as a member of the Bucks County Board, that official capacity claim, as well as all other official capacity claims against all other defendant employees of Bucks County are, in essence, claims against the employing municipal entity. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)). Accordingly, the Court will address Mr. Sanchez's official capacity claims together with his claims against Bucks County.

To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell*, 436 U.S. at 694; *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).

The only policy-related allegation Mr. Sanchez asserts is that investigators – presumably Defendants Bocherrek, Onisek, and DiSandro – allegedly said "they can do what they want and

---

[5] To the extent the individual capacity claim against Judge Bateman concerns his role in Mr. Sanchez's criminal proceedings, that claim is also dismissed with prejudice. Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (per curiam); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).

can keep [him] locked for as long as they want cause there is no policy." (ECF No. 2 at 9.) This allegation suggests that the constitutional violations alleged were not caused by a municipal policy and is too vague and insufficient to allege plausibly that Mr. Sanchez was injured due to a custom of Bucks County. Accordingly, his official capacity claim against each defendant, as well as his direct claim against Bucks County, will be dismissed. However, because the Court cannot say at this time that Mr. Sanchez can never assert plausible official capacity claims against Bucks County employees or claims against the County itself, the dismissal will be without prejudice, and Mr. Sanchez will be afforded an opportunity to file an amended complaint if he is capable of curing the defect the Court has identified.

### B.   Individual Capacity Claims

#### 1.   Retaliation Claims Against Bocherrek, Onisek, and DiSandro

Mr. Sanchez asserts that Defendants Bocherrek, Onisek, and DiSandro engaged in retaliation against him when they allegedly conducted an investigation of Mr. Sanchez because he had filed an earlier lawsuit against Bucks County personnel. Specifically, he asserts that these defendants suggested to him that his status in administrative segregation could be changed if Mr. Sanchez dropped his pending lawsuit against Bucks County. (ECF No. 2 at 6.) In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, No. 19-2580, 2020 WL 2125780, at *3 (3d Cir. May 5, 2020). Because Mr. Sanchez asserts these defendants caused him to remain in administrative segregation unless he

10

dropped his civil suit, the retaliation claim will be served on Defendants Bocherrek, Onisek, and DiSandro for a responsive pleading.[6]

### 2. Claims Based on Grievances

Mr. Sanchez refers to numerous grievances he filed against prison officials concerning his placement in administrative segregation. He also appended numerous grievance forms to his Complaint. Claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam). Accordingly, the facts alleged by Mr. Sanchez about grievances do not give rise to a plausible basis for a constitutional claim and will be dismissed with prejudice.

### 3. Claims against District Attorney Weintraub

Mr. Sanchez has named Bucks County District Attorney Weintraub as a defendant. He is alleged to be a member of the Board and also, in his role as Bucks County District Attorney, he allegedly sought to alter Mr. Sanchez's conditions of release by filing a motion in the Court of Common Pleas. Prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Absolute immunity extends to the decision to initiate a prosecution, *Imbler*, 424 U.S. at 431, including "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992), presenting a

---

[6] To the extent Mr. Sanchez is raising retaliation claims on other grounds or against other defendants, those claims are unclear and based solely on conclusory allegations. Accordingly, they will be dismissed without prejudice as implausible.

state's case at trial, *Imbler*, 424 U.S. at 431, and appearing before a judge to present evidence. *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020). Moreover, district attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009).

To the extent Mr. Sanchez seeks to assert a claim against Mr. Weintraub based on his filing a motion in the Court of Common Pleas, that claim is not plausible and will be dismissed with prejudice because Mr. Weintraub is entitled to absolute immunity for actions he took pursuing a prosecution on behalf of the Commonwealth. To the extent the claim against Mr. Weintraub is based on his membership on the Board, the claim will be dismissed without prejudice for the reasons stated below, namely that he has made no substantive allegations against Weintraub in that role.

### 4. Claims Based on Disciplinary and Administrative Segregation

Mr. Sanchez asserts he was placed in disciplinary segregation due to a "minor misconduct" and also placed in administrative segregation. With regard to disciplinary segregation, the Third Circuit Court of Appeals has noted that, "[g]enerally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)). However, while "'pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in [disciplinary segregation] without explanation or review of their confinement.'" *Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 92 (3d Cir. 2018) (*per curiam*) (quoting

*Bistrian v. Levi,* 696 F.3d 352, 375 (3d Cir. 2012)).  With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell,* 418 U.S. 539 . . . (1974)." *Kanu,* 739 F. App'x at 116.  Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff,* 418 U.S. at 563-66); *see also Stevenson v. Carroll,* 495 F.3d 62, 70 (3d Cir. 2007).

Mr. Sanchez's claim based on being placed in disciplinary segregation is not plausible because he does not allege that he failed to receive the process required by *Wolff.*  As noted, sometime around August 2021, Mr. Sanchez was placed in restricted housing for 37 days and thereafter assigned to administrative segregation, allegedly due to what he describes as a "minor misconduct allegation." (ECF No. 2-1 at 8.)  He received notice of the charges – that he was making telephone calls using other inmates' accounts.  He also received a written decision on the charge from Defendant DiSandro advising him that "the investigation concerned you making calls on other inmates accounts . . . is another institutional violation that you have engaged in." (*Id.* at 66.)  He received a 30-day sentence (*id.* at 69), after which he was moved from disciplinary segregation to administrative segregation, and informed by Warden Reed that "his status was due for review shortly." (*Id.* at 71.)  Mr. Sanchez fails to allege that he received no opportunity to respond to the charges.  Accordingly, his claims based on placement in disciplinary segregation will be dismissed.  Because Mr. Sanchez may be capable of curing the defect the Court has identified, the dismissal will be without prejudice.

Mr. Sanchez's claims based on being placed in administrative segregation are also not plausible given that the attachments to the complaint show that the minimal due process required for the placement was provided. With regard to administrative segregation, prison officials "must provide detainees who are transferred into more restrictive housing for administrative purposes only an explanation of the reason for their transfer as well as an opportunity to respond." *Stevenson v. Carroll*, 495 F.3d 62, 70 (3d Cir. 2007). This notice must be within a "reasonable time" following the transfer, *id.* (quoting *Hewitt v. Helms*, 459 U.S. 460, 476 n.8 (1983)), and the opportunity to respond can be satisfied by written grievances, *see Hewitt*, 459 U.S. at 476. According to the United States Supreme Court,

> [W]hen an individual is transferred to administrative segregation because he is "feared to be a threat to institutional security," detention officials must provide only an informal, non-adversary evidentiary review . . . for the decision that an inmate represents a security threat and the decision to confine an inmate to administrative segregation pending completion of an investigation into misconduct charges against him. An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. . . . So long as this occurs, and the decisionmaker reviews the charges . . . the Due Process Clause is satisfied.

*Steele v. Cicchi*, 855 F.3d 494, 507 (3d Cir. 2017) (quoting *Hewitt*, 459 U.S. at 474).

Mr. Sanchez alleges he was first placed in administrative segregation on November 5, 2020, for an indeterminate time.[7] (ECF No. 2 at 5.) The attachments to the complaint show, however, that he was provided with an explanation of the reason for the transfer – the investigation that eventually resulted to the new pending criminal charges – as well as an opportunity to respond. While Mr. Sanchez has not included documents dating as early as

---

[7] While Mr. Sanchez asserts he was again placed in administrative segregation in August 2021 following his disciplinary term for using other inmates' telephone accounts, other that this conclusory allegation, Mr. Sanchez does not describe this occurrence in any detail.

November 2020, other documents he filed show he received a contemporaneous explanation, that

he used the grievance process to state his side of the story, and continued to receive updates on

his status.   For example, on February 4, 2021, Mr. Sanchez was told in response to a grievance

to "refer to your [inquiry] dated 1-18-2021 you were informed of the reason you are on

locked/RHU status." (*Id.* at 25.)  On February 17, 2021, Mr. Sanchez received a reply to a letter

he wrote to Board member Sara Webster in which Ms. Webster told him she "checked with the

prison who confirmed that indeed you had been under investigation and therefore subject [to]

confinement in your cell pending investigation of activities jeopardizing the security of the

institution." (*Id.* at 25.)  On February 22, he was informed in response to an inquiry that he was

being held in administrative segregation because "as you were previously told, charges are

forthcoming." (*Id.* at 27.)  Mr. Sanchez was also told "your status is reviewed regularly."  (*Id.* at

30.)  On March 16, 2021, in response to a grievance he was told his status was due to be

reviewed again on March 26.  (*Id.* at 35.)  On April 1, Warden Reed told Mr. Sanchez "you are

on administrative lock for the safety and security of the institution at this time.  Your status will

continue to be reviewed regularly and when deemed appropriate you lock status will be

removed." (*Id.* at 36.)  One week later, he was told "no further explanation will be provided at

this time.  Your status will be reviewed regularly." (*Id.* at 38.)  Mr. Sanchez continued to seek

monthly updates on his status and received a response for May, June, and July.  (*Id.* at 40-44.)

As noted above, Mr. Sanchez was released from administrative segregation in July 2021.  (ECF

No. 2 at 6.)  Given this record, Mr. Sanchez's due process claim based on being placed in

administrative segregation is not plausible and will be dismissed with prejudice.

### 3.   Access to Counsel Claim

Mr. Sanchez alleges that while he was in administrative segregation he was not allowed to contact his defense attorney.  (ECF No. 2 at 8.)  "Under the Sixth Amendment, a pretrial detainee has a right to utilize counsel to defend against a criminal case that the state has brought against him." *Prater v. City of Philadelphia*, Civ. A. No. 11-1618, 2015 WL 3456659, at *4 (E.D. Pa. June 1, 2015) (on remand) (citing *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001)).  With respect to restrictions on attorney contact with clients, "[t]he Supreme Court [has] held that 'inmates must have a reasonable opportunity to seek and receive the assistance of attorneys' and that [prison] '[r]egulations and practices that unjustifiably obstruct the availability of professional representation . . . are invalid.'" *Id.* at 184 (fourth alteration in original) (quoting *Procunier v. Martinez*, 416 U.S. 396, 419 (1974)).  Thus, where an institutional restriction impedes a pretrial detainee's access to criminal counsel, "'the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.'" *Id.* at 187 (quoting *Bell*, 441 U.S. at 547).  A prison regulation restricting a pretrial detainee's contact with his attorney will be unconstitutional where it "'unreasonably burden[s] the inmate's opportunity to consult with his attorney and to prepare his defense.'" *Id.* (quoting *Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir. 1978)).

Mr. Sanchez's access to counsel claim is undeveloped and thus cannot pass screening. He alleges only in conclusory terms that he could not contact his attorney but fails to give any specific dates when he was denied contact, who denied him access, or that he needed to contact counsel.  Accordingly, the claim must be dismissed.  However, because the Court cannot say that Mr. Sanchez can never assert a plausible Sixth Amendment access to counsel claim, the

dismissal will be without prejudice, and he will be given an opportunity to return with an amended complaint to reassert the claim.

### 4. Medical Claims

Mr. Sanchez alleges he wrote to "Monica" of the BCCF mental health unit stating that he was hearing voices, having sleep disturbances and panic attacks, and requesting she have him moved to a different cell block. (*Id.* at 47-48.) He also complained to some unknown person about foot injuries but was told he could not have crutches or a wrap for his foot while in restricted housing and that he could not have Air Jordan sneakers because it was not an appropriate treatment for his foot injury, but he could apply to get orthopedic shoes. (*Id.* at 90-105.) An x-ray performed on his foot on January 20, 2021 was negative. (*Id.* at 98.) The only defendant Mr. Sanchez has named who could be relevant to his medical claim is "BCCF Primecare Medical dept. and mental health dept.", whom the Court understands to be a reference to Primecare Medical. Even assuming that "Monica" is an employee of Primecare Medical, the claim is not plausible.[8]

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to

---

[8] "If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (per curiam) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff."). Because Mr. Sanchez asserts he was under the care of Monica, he cannot assert a plausible deliberate indifference claim against the other named non-medical prison official Defendants.

inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

Moreover, our Court of Appeals has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583 (3d Cir.

18

2003)).  Rather, in order to hold a private health care company like Primecare Medical liable for

a constitutional violation under § 1983, Mr. Sanchez must allege the provider had "a relevant . . .

policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*,

318 F.3d 575, 583-84 (citing *Bd. of the Cty. Comm'rs of Bryan Cty., Oklahoma v. Brown*, 520

U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, Civ. A. No. 13-1078, 2017 WL

1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted

by a prison to provide health care for inmates, . . . it can only be held liable for constitutional

violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious

medical needs.") (citations and quotations omitted).

Mr. Sanchez has failed to allege that he was injured due to a policy or custom of

Primecare Medical exhibiting deliberate indifference to a serious medical need.  Moreover, Mr.

Sanchez has not alleged that his foot injury was objectively serious inasmuch as he concedes he

was seen for the problem and an x-ray of his foot was negative.  While hearing voices and

having sleep disturbances and panic attacks may constitute serious medical needs, the only

treatment Mr. Sanchez requested was to ask Monica to have him moved to a different cell block.

This does not implicate a policy or custom of Primecare Medical to deny him treatment.

Accordingly, Mr. Sanchez's medical claims will be dismissed.  The dismissal against all

Defendants other than Primecare Medical will be with prejudice, but the Court will permit Mr.

Sanchez the opportunity to return with an amended complaint if he is capable of curing the

defect in his claim against Primecare or can name a defendant who personally acted to refuse,

delay, or prevent him from receiving mental health services.

### 5.   Loss of Property

Finally, Mr. Sanchez asserts a constitutional claim for lost property, including eyeglasses, food items, sneakers and clothing, books, photos, and unspecified legal materials.[9] A prisoner detained by Bucks County cannot state a constitutional claim based on the loss of his property because "'an unauthorized intentional deprivation of property by a [jail official] does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" *Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). While the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Con. Stat. § 8541, provides "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person," there are eight exceptions to this grant of immunity. *See id.* § 8542(b). One such exception is that a political subdivision like Bucks County may be held

> liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
> (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and
> (2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

---

[9] There is no indication that Mr. Sanchez seeks to raise any state law claims concerning lost property. If he intends to raise such a claim, he may do so in an appropriate state court as there is no apparent independent basis for jurisdiction here for such a claim and exercise of supplemental jurisdiction would be improper since no Defendant remaining after statutory screening is alleged to have been involved in the loss of Mr. Sanchez's property.

Because, under these provisions, Mr. Sanchez has a meaningful postdeprivation remedy available for his property loss claim in an appropriate state court, his constitutional claim is not plausible and must be dismissed.

### 6.   Defendants Against Whom There are No Substantive Allegations

Mr. Sanchez has named numerous defendants against whom he has made no substantive allegations, specifically, Warden Lagana; Metelus Ward; Captain Nottingham; Lt. Mazzocchi; Assistant Director Coyne; Prison Oversight Board members Robert Harvie, Jr., Diane M. Ellis-Marseglia, Gene DiGirolame, Milt Warrell, Ann Russavage-Faust, Christine Shenk, Karen Dopson, Daniel Grace, and Sara Webster.  For this reason, any claims against them are not plausible and will be dismissed without prejudice.[10]

## IV.   CONCLUSION

For the foregoing reasons, the Court will direct service of Mr. Sanchez's Complaint for a responsive pleading against Defendants Frank Bocherrek, Dan Onisek and DiSandro only with regard to Mr. Sanchez's individual capacity claim of retaliation.  Any claim against Defendant Wallace Bateman, to the extent Mr. Sanchez seeks to bring that claim based on Judge Bateman's role as a Judge of the Court of Common Pleas, is dismissed with prejudice.  Any claim against Defendant Bucks County District Attorney Matt Weintraub, to the extent Mr. Sanchez seeks to bring that claim based on Mr. Weintraub's actions representing the Commonwealth of Pennsylvania in the Court of Common Pleas, is dismissed with prejudice.  All other official capacity claims against all other Defendants are dismissed without prejudice.  All claims based

---

[10] The Court notes that there are conclusory allegations in the complaint that Mr. Sanchez was treated differently than similarly situated individuals.  To the extent those allegations could be liberally construed to raise an equal protection claim, the claim fails because it is merely conclusory and has not been adequately raised against any named defendant.

on grievances are dismissed with prejudice.  All claims based on deliberate indifference to a serious medical need against all Defendants other than Primecare Medical are dismissed with prejudice.  Mr. Sanchez's individual capacity claims against all defendants other than Defendants Bocherrek, Onisek and DiSandro are dismissed without prejudice.

The Court will permit Mr. Sanchez the option of proceeding only on his individual capacity retaliation claims against Defendants Bocherrek, Onisek, and DiSandro or filing an amended complaint to attempt to cure the defects the Court has identified in his other claims that have been dismissed without prejudice.  An appropriate order follows giving further instructions to Mr. Sanchez about his options.

**BY THE COURT:**

**GENE E.K. PRATTER, J.**