**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ALFONZO SANCHEZ** | |
| **Plaintiff,** | **CIVIL ACTION NO. 21-4797** |
| **v.** | |
| **MR. PIROLLI,** *et al.*, | |
| **Defendants.** | |

**<u>MEMORANDUM OPINION</u>**

Rufe, J.                                                                                                March 2, 2022

Plaintiff Alfonzo Sanchez, a prisoner held at Bucks County Correctional Facility ("BCCF"), filed this civil action alleging that on January 26, 2017, a state court entered an order vacating his criminal homicide conviction and granting him a new trial.[1] Shortly thereafter, he was transported from a state correctional institution to the BCCF to await retrial.

This case arises from alleged retaliation against Sanchez for filing an earlier civil suit challenging the circumstances surrounding his first conviction.  In the current case, although the bulk of Sanchez's claims were dismissed, Sanchez was granted leave to file an amended complaint as some of his claims were dismissed without prejudice. In response, Sanchez filed a document purporting to be an amended complaint and a motion for temporary and permanent injunction. For the reasons stated below, Sanchez's "Amended Complaint" will be stricken and Sanchez will be granted leave to refile a comprehensive amended complaint. Sanchez's Motion for Temporary and Permanent Injunction will be denied without prejudice as premature.

---

[1] Compl. [Doc. No. 2-1] at ECF page 4.

## I.   BACKGROUND AND THE FIRST COMPLAINT

On October 28, 2021, Sanchez filed the original Complaint in this case, which brought claims against 23 people, most of whom were employees of BCCF or Bucks County officials involved in the administration of BCCF.[2] Sanchez also brought claims against "BCCF Primecare Medical dept. and mental health dept." and Bucks County.[3] This Complaint contained a number of claims relating to the conditions of Sanchez's pretrial imprisonment, including his confinement in disciplinary segregation and administrative segregation for at least six months between November 2020 and July 2021.[4] At its core, Sanchez alleged a pattern of retaliation in response to a civil rights lawsuit Sanchez filed against Bucks County, which alleges that investigators fabricated DNA evidence in his first trial.[5]

As Sanchez is a prisoner proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to review his Complaint and dismiss claims where the Complaint fails to state a claim on which relief could be granted.[6] On December 29, 2021, the Court conducted an initial

---

[2] Sanchez also brought claims against District Attorney Matt Weintraub, who is not employed by or involved in the administration of the BCCF.

[3] *See* Mem. Op. [Doc. No. 15] at 1 n.1.

[4] *See generally* Complaint [Doc. No. 2]. It is difficult to calculate the dates of Sanchez's segregation, but from the exhibits to the Complaint it appears that Sanchez filed grievances and inmate requests relating to a first period of administrative or disciplinary segregation between November 28, 2020 and May 31, 2021. These grievances indicate that Sanchez was placed back on "admin lock" status on or around July 26, 2021. *See* Exhibits to Complaint [Doc. No. 2-1] at ECF pages 42, 44.

[5] Complaint [Doc. No. 2-1] at ECF page 4.

[6] 28 U.S.C. § 1915(e)(2)(B)(ii).

review of Sanchez's Complaint and dismissed most of Sanchez's claims.[7] Many of Sanchez's claims, including claims against Defendants who are clearly protected by the Eleventh Amendment and sovereign immunity, were dismissed with prejudice. First Amendment retaliation claims against three investigators, Defendants Bocherrek, Onisek, and DiSandro, were not dismissed.[8] Additionally, several of Sanchez's claims were dismissed without prejudice, and Sanchez was granted leave to file an amended complaint to attempt to cure defects as to those claims.[9] To clarify which claims were dismissed but still might be brought in a future amended complaint, these claims and the defects identified in the original Complaint are discussed below.

### A.  "Custom or Policy" Claims Against Bucks County and Bucks County Employees

The original Complaint sued Defendants in their individual and official capacities.[10] The majority of the original Defendants are employees or officers of Bucks County, and Bucks County itself is a named Defendant.[11] Suits against a municipal official in their official capacity "are, in essence, claims against the employing municipal entity," and require a plaintiff to "allege

---

[7] This Order and the accompanying Memorandum Opinion was issued by the Honorable Gene Pratter, District Court Judge. The case was then assigned to this Court. *See* Order Jan. 12, 2022 [Doc. No. 23].

[8] *See* Order Dec. 29, 2021 [Doc. No. 16].

[9] Mem. Op. [Doc. No. 15] at 22; Order Dec. 29, 2021 [Doc. No. 16] ¶ 7.
One set of claims, the "Loss of Property" claims, were dismissed without prejudice because Pennsylvania law allows Sanchez to sue on those claims in Pennsylvania state court. Mem. Op. [Doc. No. 15] at 20.

[10] *See* Complaint [Doc. No. 2] at 2–3; Exhibit 1 (Additional Parties) [Doc. No. 2-1] at 1.

[11] One of the Defendants, Judge Bateman, is also a judge of the Bucks County Court of Common Pleas. Any claims against Judge Bateman in his capacity as a judge in Mr. Sanchez's criminal cases were dismissed with prejudice as barred by the Eleventh Amendment. *See* Mem. Opp. [Doc. No. 15] at 8.

that the [municipality's] policies or customs caused the alleged constitutional violation."[12] These claims were dismissed without prejudice because Sanchez did not "identify [the] custom or policy, and specify what exactly that custom or policy was."[13] Sanchez was granted leave to file an amended complaint bringing custom or policy claims if he could allege a specific custom or policy of Bucks County that resulted in violations of his rights.[14]

### B. Claims based on Disciplinary Status

The original Complaint challenged Sanchez's placement in disciplinary segregation. Pretrial detainees have a right to certain due process protections before disciplinary segregation can be imposed, "includ[ing] the right to receive written notice of the [disciplinary] charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence."[15] These claims were dismissed, however, because the original Complaint did not clearly allege what process, if any, was denied to Sanchez.[16] Sanchez was granted leave to file an amended complaint bringing these claims again if he could cure this defect.

### C. Access to Counsel Claims

The original Complaint alleged that while Sanchez was in administrative segregation, he was denied access to his criminal defense attorney.[17] Although pretrial detainees have a Sixth

---

[12] Mem. Op. [Doc. No. 15] at 9.

[13] *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009); Mem. Op. [Doc. No. 15] at 9.

[14] Mem. Op. [Doc. No. 15] at 10.

[15] *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018).

[16] Mem. Op. [Doc. No. 15] at 13.

[17] Mem. Op. [Doc. No. 15] at 16; Complaint [Doc. No. 2-1] at ECF page 5.

Amendment right to access criminal counsel, these claims were dismissed without prejudice because the original Complaint "fails to give any specific dates when he was denied contact [with his attorney], who denied him access," or why he had a specific need to contact counsel.[18] Sanchez was granted leave to file an amended complaint that reasserted this claim and provided more details.[19]

### D.  Medical Claims

The original Complaint also brought constitutional claims related to Sanchez's medical treatment against "BCCF Primecare Medical dept. and mental health dept.," which the Court took to mean Primecare Medical, the private company contracted to provide medical services at BCCF.[20] To state a constitutional claim against prison officials based on a failure to provide medical treatment, a prisoner must allege facts indicating that prison officials knew of and ignored the prisoner's serious medical needs.[21] "A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that [an ordinary] person would easily recognize the necessity for a doctor's attention."[22] "In order to hold a private health care company like Primecare Medical liable for a constitutional violation under § 1983, Mr. Sanchez must allege the provider had a 'relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]."[23] Allegations of medical malpractice are not

---

[18] Mem. Op. [Doc. No. 15] at 16.

[19] Mem. Op. [Doc. No. 15] at 16–17.

[20] Mem. Op. [Doc. No. 15] at 17.

[21] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *id*. at 837.

[22] *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d. Cir. 1987).

[23] Mem. Op. [Doc. No. 15] at 19 (quoting *Natale v. Camden Cnty Corr. Facility*, 318 F.3d 575, 583–84 (3d. Cir. 2003)).

enough to establish a constitutional violation, although they may raise claims under state law that could be filed in state courts.[24]

The medical treatment claims against the prison officials were dismissed with prejudice as Sanchez did not allege that any prison officials ignored a serious medical need. The claims against Primecare Medical were dismissed without prejudice, and Sanchez was granted leave to file an amended complaint if he could allege that a specific policy of Primecare Medical resulted in Sanchez's serious medical needs being ignored.[25]

### E.  Defendants Without Direct Allegations

The original Complaint listed Warden Lagana, Metelus Ward, Captain Nottingham, Lt. Mazzocchi, Assistant Director Coyne, and Prison Oversight Board members Robert Harvie, Jr., Diane M. Ellis-Marseglia, Gene DiGirolame, Milt Warrell, Ann Russavage-Faust, Christine Shenk, Karen Dopson, Daniel Grace, and Sara Webster as Defendants.[26] However, these Defendants were dismissed because Sanchez did not clearly list claims against them or allege that they were personally involved in any violations of his rights.[27] This dismissal was without prejudice, and Sanchez has the opportunity  to specifically connect these Defendants to particular claims in an amended complaint.

The original Complaint also listed Director Pirolli and Director Kratz as Defendants but failed to allege specific claims against them. Although Pirolli and Kratz were not directly

---

[24] *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

[25] Mem. Op. [Doc. No. 15] at 19.

[26] Mem. Op. [Doc. No. 15] at 21.

[27] Mem. Op. [Doc. No. 15] at 21.

addressed in the Order of December 29, 2021, Sanchez also has the opportunity to allege facts specifically connecting Defendants Pirolli and Kratz to particular claims in an amended complaint.

## II.   THE AMENDED COMPLAINT AND MOTION FOR TEMPORARY INJUNCTION

### A.   Amended Complaint

After dismissal of certain claims, Sanchez was granted leave to file an amended complaint within 30 days. The order of December 29, 2021 required that, if Sanchez chose to file an amended complaint, he would need to file a single complete document including *all* claims and the facts supporting those claims.[28] Any amended complaint would also need to repeat each of the claims that the Court has not yet dismissed—that is to say, the retaliation claims against the investigators—if Sanchez wants to proceed with those claims.[29] The purpose of this Order was to ensure that Sanchez did not accidentally give up potentially viable claims by attempting to file "supplemental" or piecemeal complaints.[30]

On January 27, 2022, Sanchez filed a document purporting to be an "Amended Complaint." While Sanchez was warned that any claim not included in the amended complaint would not be considered part of this case, the pleading Sanchez labeled as an "Amended Complaint" does not attempt to reassert most of the claims. Instead, the Amended Complaint largely objects to the Court's prior rulings and argues that discovery will permit Sanchez to

---

[28] *See* Order Dec. 29, 2021 [Doc. No. 16] ¶ 7.

[29] Order Dec. 29, 2021 [Doc. No. 16] ¶ 7.

[30] *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity . . . the most recently filed amended complaint becomes the operative pleading.").

prove his claims. As written, the Amended Complaint also excludes the claims that the Court did *not* dismiss.

In the interests of justice, and to protect Sanchez's right to assert those claims that have not been dismissed with prejudice,[31] the Court will permit Sanchez another opportunity to either (1) submit an amended complaint containing factual allegations supporting all of the claims Sanchez seeks to pursue, or (2) notify the Court that he seeks only to proceed on the claims that the Court did not dismiss earlier—specifically, his individual capacity claims against Defendants Bocherrek, Onisek, and DiSandro for retaliation.

### B.  Motion for Temporary and Permanent Injunction

Sanchez has also moved for a temporary and permanent injunction ordering his release from "Admin lock status."[32] Preliminary injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[33] "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

---

[31] *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

[32] Mot. Temporary & Permanent Inj. [Doc. No. 20]. In addition, Sanchez filed a Motion for Continuance [Doc. No. 22]. This motion is addressed in the order accompanying this Memorandum.

Finally, Sanchez also filed a motion asking this Court to appoint counsel. *See* Mot. Appoint Counsel [Doc. No. 21]. As it is premature to appoint counsel before Sanchez's complaint is fully screened on the merits, the Motion to Appoint Counsel will be addressed at a later time. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (Before determining whether to appoint counsel, "the district court must consider as a threshold matter the merits of the plaintiff's claim.").

[33] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

equities tips in his favor, and that an injunction is in the public interest."[34] Sanchez would need to clearly show (1) that he is likely to win his underlying lawsuit, (2) that he will be harmed in a way that cannot be fixed by an award of damages if his injunction is not granted, (3) that granting his injunction does not unfairly harm the Defendants, and (4) that granting the requested injunction is in the interests of society as a whole.

Sanchez's motion makes arguments that go to points (2), (3), and (4)—irreparable harm, balance of equities, and public policy. Specifically, Sanchez argues that his physical and mental health is suffering due to his administrative lock status[35] and that prisoners with similar or more serious misconduct histories are regularly released into the general prison population without harm to Defendants.[36] Sanchez also clearly invokes public policy interests, arguing that his constitutional rights are violated by his ongoing confinement and that his continued administrative lock status goes against the purpose of BCCF's administrative status policies.[37]

However, Sanchez does not, and cannot at this point, argue that he is likely to win on the merits of his case and have his administrative lock status changed. Because this order dismisses Sanchez's amended complaint and grants Sanchez leave to file a second amended complaint, it is impossible to determine whether Sanchez is likely to succeed on the merits of a second amended complaint that has not been filed. This does not reflect a judgment on the strength or weakness of

---

[34] *Id.* at 20.

[35] Mot. Temporary & Permanent Inj. [Doc. No. 20] at ¶¶ 9, 11.

[36] Mot. Temporary & Permanent Inj. [Doc. No. 20] at ¶¶ 5–7.

[37] Mot. Temporary & Permanent Inj. [Doc. No. 20] at ¶¶ 5–7.

Sanchez's claims—it is simply impossible to determine which claims or defendants will be included in the final version of Sanchez's complaint.[38]

To proceed in this case, Plaintiff must either submit a second amended complaint, which must be screened in accordance with 28 U.S.C. §§ 1915(e)(2) and 1915A(a), or notify the Court that he wants to proceed on the claims that have not been dismissed without filing a second amended complaint. Once the Court authorizes service and issues summonses to the defendants against whom Sanchez has asserted claims, Sanchez may file a motion for injunctive relief if appropriate.

## III. CONCLUSION

For the foregoing reasons, in the interests of justice, and to protect Sanchez's right to assert those claims that have not been dismissed with prejudice,[39] Sanchez's Amended Complaint will be stricken and Sanchez will be granted leave to refile a comprehensive Amended Complaint. Sanchez's Motion for Temporary and Permanent Injunction will be denied without prejudice to refiling as premature. An order will be entered.

---

[38] *See Bryant v. Raddad*, No. 21-1116, 2021 WL 2577061, at *3 (E.D. Pa. June 22, 2021) (denying prisoner's Motion for Preliminary Injunction where prisoner was granted leave to file an amended complaint).

[39] *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").